**In re the MARRIAGE OF Robert J. KURTT and Karen Lee Kurtt.**

Upon the Petition of

Robert J. Kurtt, Petitioner–Appellee,

And Concerning

Karen Lee Kurtt, Respondent–Appellant.

No. 95–1279.

Court of Appeals of Iowa.

Jan. 29, 1997.

Richard R. Vander Mey, Toledo, for Respondent–Appellant.

James Burns of Miller, Pearson, Gloe, Burns, Beatty & Cowie, P.C., Decorah, for Petitioner–Appellee.

Heard by STREIT, P.J., VOGEL, J., and SCHLEGEL, Senior Judge.*

STREIT, Presiding Judge.

Respondent appeals the economic provisions contained in the parties' dissolution of marriage decree. Specifically, she disagrees with the amount of alimony and IPERS (Iowa Public Employee Retirement System) benefits she received under the decree.

Robert and Karen Kurtt were married in 1965. They have three adult children from the marriage. In 1994 Robert filed a Petition for Dissolution of Marriage. The court approved the parties' property division stipulation. The main issues to be resolved by the trial court concerned the division of a pension and the award of alimony. In May 1995, the court entered its dissolution of marriage decree providing that Robert pay alimony of $700 per month to Karen to continue until the death of either party, remarriage of Karen, or Karen "overcoming her disability and being employable on a full-time basis," or Robert retiring from full-time employment. The court ordered that if Robert cashes out his IPERS account Karen would receive $16,000 plus interest from the date of the decree but that if he remains in IPERS until retirement, Karen would receive as alimony, upon Robert's retirement, one-third of his monthly benefits. The court reserved jurisdiction to enter a Qualified Domestic Relations Order (QDRO).

Karen appeals. She argues: (1) the court awarded her insufficient alimony; (2) alimony should be increased to provide for her health insurance needs or, in the alternative, Robert should be required to pay towards her health insurance costs; and (3) the court's award of one-third of Robert's monthly IPERS benefits was inequitable. In addition, Karen argues Robert should be required to pay all or a portion of her appellate attorney fees.

Our review of this equitable action is de novo. Iowa R.App.P. 4; *In re Marriage of Miller*, 532 N.W.2d 160, 162 (Iowa App.1995). We are not bound by the district court's findings of fact, but we do give them deference because the district court had the opportunity to view, firsthand, the demeanor of the witnesses when testifying. *Id.; In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992).

### I. Alimony and Health Insurance.

Karen argues the court should have awarded her more alimony, particularly in light of her medical condition, and that the court should have provided for modification of alimony in the event her condition worsens. If alimony is not increased on appeal, Karen wants Robert to assist with her health insurance costs.

Alimony is an allowance to the former spouse in lieu of a legal obligation to support that person. *See In re Marriage of Hitchcock*, 309 N.W.2d 432, 437 (Iowa 1981). When determining the appropriateness of alimony, the court must consider "(1) the earning capacity of each party; and (2) present standards of living and ability to pay balanced against relative needs of the other." *In re Marriage of Miller*, 524 N.W.2d 442, 445 (Iowa App.1994); *In re Marriage of Estlund*, 344 N.W.2d 276, 281 (Iowa App.1983) (citation omitted).

Alimony is not an absolute right; an award depends upon the circumstances of each particular case. *In re Marriage of Miller*, 532 N.W.2d at 162; *In re Marriage of Whelchel*, 476 N.W.2d 104, 110 (Iowa App.

---

* Senior judge from the Iowa Court of Appeals serving on this court by order of the Iowa Supreme Court.

1991); *In re Marriage of Fleener,* 247 N.W.2d 219, 220 (Iowa 1976). The discretionary award of alimony is made after considering the factors listed in Iowa Code section 598.21(3) (1995). *See In re Marriage of Hayne,* 334 N.W.2d 347, 350 (Iowa App. 1983). Traditional alimony analysis may be used in long-term marriages where life patterns have largely been set and the earning potential of both spouses can be predicted with some reliability. *In re Marriage of Francis,* 442 N.W.2d 59, 62–63 (Iowa 1989).

Robert was fifty-two and Karen was fifty-one at the time of trial. Karen is a high school graduate who has primarily been a homemaker during the marriage. In 1991 she was diagnosed with multiple sclerosis. She earns approximately $162 net income per month for her work at the American Martyr's Retreat House. Robert has a college degree and earns $2083 net per month as a wildlife biologist for the Iowa Department of Natural Resources.

The district court ordered Robert to pay $700 per month alimony to Karen, 34% of his net monthly income. In addition to the alimony, Karen receives $325 monthly payments for S.S.D.I. because of being 100% disabled from multiple sclerosis. Not considering the income tax on the alimony payments, she has almost $1200 net disposable income each month. She is also qualified for Medicare at a premium of $46.10 per month. Even though our review is de novo, we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity. *In re Marriage of Wahlert,* 400 N.W.2d 557, 560 (Iowa 1987); *In re Marriage of Benson,* 545 N.W.2d 252, 257 (Iowa 1996). We determine the trial court's assessment of alimony and order concerning medical insurance to be adequate and find no reason to depart from the trial court's finding on these issues.

Karen also argues that the court should have provided in the decree a provision for modification of alimony in the event her condition worsens. The appellate courts of this state, although stopping short of forbidding the practice, have discouraged the retention of jurisdiction to modify dissolution decrees without a showing of change of circumstance. *See In re Marriage of Schlenker,* 300 N.W.2d 164, 165 (Iowa 1981); *In re Marriage of Hoag,* 380 N.W.2d 8, 9 (Iowa App.1985); *In re Marriage of Luebbert,* 400 N.W.2d 80, 82 (Iowa App.1986). Because of the unpredictable nature of Karen's disease, we decline to specify any conditions that would allow for modification. She may seek modification upon a material, substantial, permanent, and continuous change in the circumstances of the parties. *In re Marriage of Carlson,* 338 N.W.2d 136, 141 (Iowa 1983); *In re Marriage of Full,* 255 N.W.2d 153, 159 (Iowa 1977); *Leo v. Leo,* 213 N.W.2d 495, 496 (Iowa 1973).

**II. Pension Benefits.** We treat pension benefits as marital property in Iowa which are properly subject to equitable distribution. *In re Marriage of Mott,* 444 N.W.2d 507, 510 (Iowa App.1989). The courts are not bound to achieve a precisely equal division in awards of marital property. *In re Marriage of Webb,* 426 N.W.2d 402, 405 (Iowa 1988). The proper standard "is that courts achieve an equitable and just award under the circumstances." *In re Marriage of Oler,* 451 N.W.2d 9, 11 (Iowa App.1989) (quoting *Webb,* 426 N.W.2d at 405).

Robert and Karen Kurtt were married for thirty years. As of the date of the trial, Robert had been employed by the State of Iowa for twenty-six years. The district court ordered in regard to Robert's IPERS accounts:

(a) If for any reason the Petitioner cashes out of the IPERS program the Respondent shall be entitled to receive $16,000 plus interest that accrues on said sum from the date of the decree, May 16, 1995.

(b) If the Petitioner remains in the IPERS program until retirement from full-time employment the Respondent's alimony award, upon retirement of Petitioner, shall be in the amount of one-third of Petitioner's IPERS monthly benefits.

The district court also reserved jurisdiction to enter a QDRO in a form approved by the Plan Administrator pursuant to Internal Revenue Code section 401(a)(13) and ERISA section 206(d)(3).

Karen complains the court erred in awarding her only one-third of Robert's monthly IPERS benefits when Robert retires and in not providing for mandatory withholding of her portion. It is patently unfair to give Karen only one-third of the pension entirely accumulated during the marriage. The equities of such an award are balanced only if Robert works another thirteen years. Karen should not have to wait for the court's decree to become equitable.

We modify the decree and order the parties to present to the district court a QDRO [1] equal to 50% of Robert's IPERS pension earned or accumulated during the marriage up until the date of trial. Although a formula award of the pension benefits, based upon the number of years of benefits accumulated during the marriage, may be equitable, a QDRO, when available, is preferable. *See In re Marriage of Benson,* 545 N.W.2d 252, 255 (Iowa 1996). A QDRO's simplicity and fairness is far superior to the percentage approaches discussed in *Benson.* We recognize a QDRO dealing with an IPERS pension was not available to the district court at the time of trial. In the 1996 Regular Session, the Iowa Legislature amended Iowa Code section 97B.39 to provide for a QDRO with an IPERS account. *See* 1996 Iowa Acts ch. 1187, § 10 (codified at Iowa Code § 97B.39 (1997)).[2]

***III. Attorney Fees.*** Karen requests Robert pay all or a portion of her appellate attorney fees. An award of appellate attorney fees is not a matter of right but rests within our discretion. *In re Marriage of Scheppele,* 524 N.W.2d 678, 680 (Iowa App. 1994). In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal. *Id.* Given the circumstances of the parties in this action, we find equity warrants an award of appellate attorney fees to Karen in the amount of $750.

**AFFIRMED AS MODIFIED.**

---

1. The QDRO shall be in a form approved by the Plan Administrator pursuant to Internal Revenue Code section 401(a)(13) and ERISA section 206(d)(3).

2. The parties are directed to contact IPERS counsel for a model QDRO. Telephone 515–281–0020 or 800–622–3849.